UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHARON K. OLIVER,            )
                             )
        Plaintiff,           )
                             )       CIVIL ACTION NO.
VS.                          )
                             )       3:13-CV-2566-G
CITIMORTGAGE, INC.,          )
                             )
        Defendant.           )

### MEMORANDUM OPINION AND ORDER

Before the court is the plaintiff's amended motion to remand and request for attorney's fees[*] (docket entry 10). For the reasons set forth below, the motion to remand is granted and the request for attorney's fees is denied.

#### I. BACKGROUND

##### A. Factual Background

This case concerns a homeowner's mortgage modification. The plaintiff, Sharon K. Oliver, signed a security instrument on her home with the defendant,

---

[*]     The plaintiff titled this filing "Plaintiff's Response to Defendant's Amended Motion to Remand and Brief in Support." However, the plaintiff appears to have intended it to be a response to the defendant's amended notice of removal, and the relief it seeks is a remand to state court, so the court will refer to it as an amended motion to remand.

CitiMortgage, Inc. ("CMI"), in 2004.  *See* Plaintiff's Original Petition ("Petition") ¶ 11 (docket entry 1-1).  However, Oliver fell behind on her mortgage payments in 2008, and CMI sought to foreclose on her home.  *Id.* ¶¶ 12-13.  Instead of following through with the foreclosure, CMI offered Oliver a "Home Affordable Modification Trial Period Plan," under which Oliver could make a certain number of reduced mortgage payments in order to become eligible for a permanent "Modification Agreement."  *Id.* ¶ 14.  Oliver successfully made the trial payments in late 2009, so in May 2010, CMI offered her a Modification Agreement.  *Id.* ¶¶ 14-15.  Oliver did not immediately sign the Modification Agreement, instead requesting a change to one term of the agreement from a CMI employee named Trinity Hathaway.  *Id.* ¶ 15.  Hathaway allegedly told Oliver to continue making her mortgage payments while CMI reviewed her requested change.  *Id.* ¶¶ 15-16.  However, though Oliver continued to make mortgage payments for the next year, she never heard back from CMI about whether her term change had been accepted.  *Id.* ¶¶ 16-17.  In early 2011, CMI stopped accepting Oliver's payments, but she claims that she was not updated about the status of her loan.  *Id.* ¶ 17.  Then in April 2013, CMI sued to foreclose on Oliver's home.  *Id.* ¶ 18.

B.  <u>Procedural Background</u>

On June 18, 2013, Oliver filed this suit in the 116th Judicial District Court of Dallas County, Texas, claiming that CMI breached the Modification Agreement.  *See*

Petition ¶¶ 2, 11-18. In addition to breach of contract, Oliver claims violations of the Texas Debt Collection Act ("TDCA") and the Texas Deceptive Trade-Practices Act ("DTPA"), as well as promissory estoppel and common law fraud. *Id.* ¶¶ 19-43. Oliver has requested economic and exemplary damages, as well as equitable relief that would allow her to continue to make payments according to the modification agreement. *Id.* ¶ 48.

Shortly after Oliver served CMI with process in the state court suit, CMI filed a notice of removal with this court on July 3, 2013. *See* Notice of Removal ("Notice") (docket entry 1). When Oliver moved to remand, *see* Plaintiff's Motion to Remand and Request for Attorney Fees (docket entry 4), CMI filed an amended notice of removal, which incorporated by reference its first notice of removal and fleshed out its amount-in-controversy argument. *See* Amended Notice of Removal ("Amended Notice") (docket entry 8). Oliver responded with an amended motion to remand, which incorporated her original motion by reference and added some detail to her remand arguments. *See* Amended Motion to Remand at 1. She also filed an amended complaint, which adds details about the value of her claim. *See* Plaintiff's First Amended Petition (docket entry 11).

As a New York corporation with its principal place of business in O'Fallon, Missouri, CMI removed the present action to this court based on diversity of citizenship jurisdiction. Amended Notice at 3-4. Oliver does not contest the

complete diversity of the parties' citizenship in this case. *See* Amended Motion to Remand at 3. However, she argues that this court lacks subject matter jurisdiction because the amount in controversy is less than $75,000, and she asks that this case be remanded to the state court from which it was removed. *Id.* at 1.

## II.  ANALYSIS

### A.  Procedural Objections

Before reaching the merits of Oliver's motion to remand, the court must first address two procedural arguments that Oliver makes regarding the filing of CMI's amended notice of removal. Oliver first objects that the filing "is not properly before the Court" because it was filed by CMI's new attorney, who had not yet been recognized as CMI's counsel by the court. Amended Motion to Remand at 1-2. CMI moved for substitution of counsel on the same day that it filed the amended notice, *see* Motion to Substitute Attorney (docket entry 7), but the court had not yet granted the motion when the new attorney filed the amended notice. *See* Order of July 25, 2013 (docket entry 9). Oliver does not cite any reason why that would make the notice improperly filed. Federal Rule of Civil Procedure 11 only requires that a pleading be signed by an attorney of record, which need not be the party's current attorney. *See* FED. R. CIV. P. 11(a); *Guess?, Inc. v. Chang*, 912 F. Supp. 372, 380 (N.D. Ill. 1995). Therefore, the court concludes that Oliver's objection is without merit.

Oliver also argues that the amended notice was not timely filed. *See* Amended Motion to Remand at 2-3. She claims that CMI was served via fax on June 19, 2013, making its amended notice of removal, which CMI filed on July 24, 2013, fall outside of the 30 days allowed by 28 U.S.C. § 1446(b)(1). *Id.* However, as CMI points out, the 30 days did not start until CMI was formally served with process under Texas law, which required service of citation, not merely a faxed complaint. *See* Defendant CitiMortgage, Inc.'s Response to Amended Motion to Remand at 5 (docket entry 17) (citing *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210-11 (5th Cir. 2005); *Texas Natural Resource Conservation Commission v. Sierra Club*, 70 S.W.3d 809, 813 (Tex. 2002)). That service was not completed until June 27. *See* Exhibit 1 to Response to Amended Motion to Remand (docket entry 17-1). Therefore, CMI filed its amended notice of removal within the 30 days permitted by 28 U.S.C. § 1446(b)(1). Furthermore, Federal Rule of Civil Procedure 15 grants parties 21 days to amend pleadings after they are filed. *See* FED. R. CIV. P. 15(a). CMI filed its original notice of removal on July 3, 2013, and its amended notice of removal on July 24, within the time frame permitted by the rule. Under either of those rules, CMI's amended notice of removal was timely filed.

B. <u>Legal Standard</u>

Defendants may remove from state court any civil action over which the federal courts would have had original jurisdiction. 28 U.S.C. § 1441(a). Federal

district courts have original jurisdiction over any civil action in which complete diversity of citizenship exists between the parties and the matter in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). When a defendant seeks removal on the basis of diversity jurisdiction, the federal court determines the amount in controversy based on the specific, "good faith" sum demanded by the plaintiff in her state court petition. *See* 28 U.S.C. § 1446(c)(2).

However, when a plaintiff fails to make a specific request for damages, such as when a state's rules prohibit specific damage requests, the burden falls on the defendant seeking removal to prove the value of the plaintiff's claims. See *St. Paul Reinsurance Company, Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (citing *Allen v. R & H Oil & Gas Company*, 63 F.3d 1326, 1336 (5th Cir. 1995)). In those situations, the removing defendant "must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000." *Manguno v. Prudential Property & Casualty Insurance Company*, 276 F.3d 720, 723 (5th Cir. 2002). This requirement can be satisfied if the defendant shows that "(1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth summary judgment type evidence of facts in controversy that support a finding of the requisite amount." *Id.* (internal quotation marks omitted). Under either of those methods, a removing defendant must "do more than point to a state law that *might* allow the plaintiff to recover more than what is pled."

*De Aguilar v. Boeing Company*, 47 F.3d 1404, 1412 (5th Cir.) (emphasis in original), *cert. denied*, 516 U.S. 865 (1995). Furthermore, "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno*, 276 F.3d at 723.

### C. Application

#### 1. *Amount in Controversy*

Because neither Oliver nor CMI disputes the complete diversity of the parties' citizenship, the court need only address whether the amount in controversy exceeds $75,000 to decide whether this action must be remanded, . *See* Amended Motion to Remand at 3; Amended Notice at 3-4. CMI argues that to determine the amount in controversy, the court can rely on the "Statement of Damages" in Oliver's petition, which states that Oliver "'seeks monetary relief of $100,000 or less and nonmonetary relief.'" *See* Notice ¶ 8 (quoting Petition ¶ 10). However, that paragraph in Oliver's petition merely conforms to Texas Rule of Civil Procedure 47, which requires plaintiffs to select one of five prescribed claims for relief, and does not represent a request for a specific dollar amount of damages. *See* TEX. R. CIV. P. 47. Furthermore, because it requires plaintiffs to state their damage requests in the form of these prescribed, broad ranges, that provision effectively preclude plaintiffs from requesting specific damage amounts. See *id.* Therefore, CMI has the burden to prove, by a

preponderance of the evidence, that the amount in controversy satisfies the jurisdictional minimum. See *St. Paul Reinsurance Company*, 134 F.3d at 1253.

As stated above, CMI can satisfy its burden in one of two ways. First, it can show that Oliver's petition makes it "facially apparent" that if Oliver succeeds with her claims, her recovery will exceed $75,000. See *id.* Second, if Oliver's claims do not make the amount in controversy "facially apparent," CMI can provide "summary judgment-type evidence" showing that the facts in controversy make it more likely than not that, should Oliver succeed, her recovery would meet the minimum required amount. See *id.* Although CMI does not explicitly designate its arguments as falling under either the "facially apparent" or "summary judgment type evidence" standards, the court construes its pleadings as including both types of arguments. The court will thus address the two groups of arguments separately below.

2. *Facially Apparent*

One way that a defendant can satisfy the amount-in-controversy requirement is by showing that the plaintiff's state court petition makes it "facially apparent" that her claims will more likely than not exceed $75,000. See *Manguno*, 276 F.3d at 725. CMI first contends that it is facially apparent that the amount in controversy exceeds $75,000 because Oliver requests "'monetary relief of $100,000 or less.'" Notice ¶ 8 (quoting Petition ¶ 10). However, as discussed above, Texas law required Oliver to

include that statement in her petition, so it is not evidence of the actual value of her claim.

CMI further argues that Oliver's claims, on their face, amount to more than $75,000, and their value is thus facially apparent, because "[i]n addition to . . . economic damages, Oliver . . . seeks damages for emotional pain and suffering, exemplary damages and attorney's fees." Amended Notice at 5 (internal quotation marks omitted). CMI breaks down Oliver's potential recovery into three parts -- economic damages, additional damages, and attorney's fees. CMI first contends that economic damages could fall between $7,785.43 and $29,674.42, depending on which theory of damages Oliver pursues. *Id.* Second, CMI argues that under the DTPA, Oliver can recover "additional damages" of up to "three times the amount of damages for mental anguish and economic damages," if she can prove that CMI acted intentionally. *Id.* at 5-6. Finally, CMI asserts that the addition of Oliver's requested attorney fees to her damages makes it more likely than not that Oliver's recovery would exceed $75,000. See *id.* at 6-7.

In certain circumstances, the Fifth Circuit has found that a plaintiff's claims for additional damages -- such as punitive or exemplary damages and attorney's fees -- can establish the requisite amount in controversy. For instance, in *Manguno*, the Fifth Circuit found that the plaintiff's class action petition made it "facially apparent" that recovery could exceed $75,000 when it determined that the aggregate statutorily

authorized attorney's fees alone would exceed that amount. *Manguno*, 276 F.3d at 724. Similarly, in *Allen*, the court found that a class of 512 plaintiffs who were seeking punitive damages would most likely have a claim that exceeded the jurisdictional minimum. *Allen*, 63 F.3d at 1336.

Unlike the plaintiffs in those cases, however, Oliver does not bring a large class action, but a relatively small breach-of-contract claim, which she has already clarified is only seeking reliance damages of $7,784.17. *See* Amended Motion to Remand at 4. Thus, while the court acknowledges that Oliver's petition includes a broad request for damages, it disagrees that this alone makes the amount in controversy "facially apparent." Adding an already indefinite amount of economic damages to an unknown amount of potential additional damages and attorney's fees -- the recovery of which is here based upon unsupported allegations of intentional wrongdoing -- does not establish that it is "facially apparent" that the amount in controversy exceeds $75,000 in this case.

3. *Summary Judgment Type Evidence*

When the amount in controversy is not "facially apparent," a defendant seeking removal can carry its burden by "set[ting] forth summary judgment type evidence . . . that support[s] a finding of the requisite amount." *Manguno*, 276 F.3d at 723 (internal quotation marks omitted). This process involves laying out "the *facts* in controversy -- preferably in the removal petition, but sometimes by affidavit -- that

support a finding of the requisite amount." *Allen*, 63 F.3d at 1335 (emphasis in original). To prevail, the removing party must produce more than mere "conclusory allegations." *Id.*

Here, CMI argues that the value of Oliver's home, which it contends exceeds $75,000, should control for purposes of determining amount in controversy "because Oliver filed this action to effectively enjoin CMI from enforcing its lien against Oliver's real property." Amended Notice at 7. CMI bases its argument on the well-established principle that "[i]n an action for . . . injunctive relief, the amount in controversy is the 'value of the object of the litigation.'" *Id.* (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983)). In support of its contention, CMI includes an unauthenticated valuation of Oliver's property from the Dallas Central Appraisal District as evidence that the property's value exceeds $75,000. Notice ¶ 10. CMI argues that while Oliver may not directly request an injunction, because foreclosures are automatically stayed under Texas Rule of Civil Procedure 736.11 when a separate lawsuit is filed that involves the loan at issue in the foreclosure, this lawsuit had the "practical effect" of requesting an injunction. Amended Notice at 7-8 (citing TEX. R. CIV. P. 736.11).

CMI relies on a number of cases to support its position. *See* Amended Notice at 8 (listing cases). However, the plaintiffs in the cited cases actually requested injunctions or temporary restraining orders to prevent foreclosure. See, *e.g.*, *Azzam v.*

*Wells Fargo Bank, N.A.*, CIV.A. H-10-4616, 2011 WL 149350, at *2-3 (S.D. Tex. Jan. 18, 2011); *Govea v. JPMorgan Chase Bank, N.A.*, CIV.A. H-10-3482, 2010 WL 5140064, at *1 (S.D. Tex. Dec. 10, 2010); *Martinez v. BAC Home Loans Servicing, LP*, 777 F. Supp. 2d 1039, 1042 (W.D. Tex. 2010).  None of the cited cases appears to have involved the sort of collateral injunctive effect that TRCP 736.11 has upon a foreclosure proceeding.

The court acknowledges that Oliver's filing this suit has had the collateral effect of producing an injunction, but that does not change the fact that Oliver's petition requests various types of recovery for an allegedly breached contract, including reliance damages and equitable relief to allow her to continue making payments on the modified mortgage, not an injunction.  *See* Petition ¶ 48.  Therefore, for the court to conclude, as CMI would have it, that "Oliver sues to protect possession of and title to real property," *see* Amended Notice at 8, requires an inference that goes far beyond the plain language of Oliver's petition.  As a result, the court concludes that CMI's "summary judgment type evidence" fails to show that Oliver's claim surpasses the amount in controversy threshold prescribed by 28 U.S.C. § 1332(a).

D.  Attorney's Fees

Oliver seeks attorney's fees and costs incurred by having to oppose CMI's removal.  *See* Motion to Remand ¶¶ 14-15.  Federal law provides that "[a]n order

remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Fifth Circuit has stated that "[t]he application of § 1447(c) requires consideration of the propriety of the removing party's actions based on an objective view of the legal and factual elements in each particular case." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000). In other words, in determining whether to grant Oliver's request for attorney's fees, the court must determine "whether the defendant had *objectively reasonable* grounds to believe the removal was legally proper." See *id.* (emphasis added). The court concludes that CMI's arguments related to Oliver's possible recovery under the DTPA and the injunctive effect of her lawsuit, while not ultimately successful, did constitute "objectively reasonable grounds to believe" that moving for removal was legally valid. Therefore, the court denies Oliver's request for attorney's fees.

### III.  CONCLUSION

For the reasons stated above, Oliver's motion to remand is **GRANTED**, while her request for attorney's fees is **DENIED**.

This case is **REMANDED** to the **116th Judicial District Court of Dallas County, Texas**. The clerk shall mail a certified copy of this order to the district clerk of Dallas County, Texas. 28 U.S.C. § 1447(c).

**SO ORDERED**.

January 27, 2014.

_____
A. JOE FISH
**Senior United States District Judge**