UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHARON K. OLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:13-CV-2566-G |
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant's motion for reconsideration (docket entry 22).  In its motion, the defendant, CitiMortgage, Inc. ("CMI"), argues that in concluding that the amount in controversy in this case does not exceed $75,000, the court did not properly evaluate the potential recovery of the plaintiff, Sharon Oliver, under the Deceptive Trade Practices Act ("DTPA"), and did not place enough weight on the plaintiff's ability to recover her attorney's fees.  *See* Defendant's Brief in Support of Its Motion to Reconsider Order Granting Plaintiff's Motion to Remand ("Defendant's Brief") at 1 (docket entry 23).  For the reasons stated below, the motion is denied.

"For reasons of judicial economy and finality, . . . motions [for reconsideration] are disfavored and are rarely granted."  *Resolution Trust Corporation v. Aetna Casualty &*

*Surety Company*, 873 F. Supp. 1386, 1393 (D. Ariz. 1994).  Furthermore, "[i]t is well

settled that motions for reconsideration should not be used . . . to re-urge matters

that have already been advanced by a party."  *Helena Laboratories Corp. v. Alpha*

*Scientific Corp.*, 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (citing *Browning v.*

*Navarro*, 894 F.2d 99, 100 (5th Cir.1990)), *aff'd*, 274 F. App'x 900 (Fed. Cir. 2008).

CMI does not present any new arguments in its motion.  Instead, it asserts that

the court did not properly consider its arguments on additional damages and

attorney's fees in ruling on the motion to remand.  *See* Defendant's Brief at 1.

Regarding these arguments, the court held that "[a]dding an already indefinite

amount of economic damages to an unknown amount of potential additional

damages and attorney's fees -- the recovery of which is here based upon unsupported

allegations of intentional wrongdoing -- does not establish that it is 'facially apparent'

that the amount in controversy exceeds $75,000 in this case."  *See* Memorandum

Opinion and Order of January 27, 2014 at 10 (docket entry 21).  The court will

briefly elaborate on that holding.

First, CMI's argument related to additional damages for intentional

wrongdoing under the DTPA fails because CMI calculates excessive damages under a

misinterpretation of Texas Business & Commerce Code § 17.50(b)(1).  That section

provides that a plaintiff who successfully sues under the DTPA may recover:

> [T]he amount of economic damages found by the trier of
> fact. If the trier of fact finds that the conduct of the

> defendant was committed knowingly, the consumer may
> also recover damages for mental anguish, as found by the
> trier of fact, and the trier of fact may award not more than
> three times the amount of economic damages; or if the trier
> of fact finds the conduct was committed intentionally, the
> consumer may recover damages for mental anguish, as
> found by the trier of fact, and the trier of fact may award
> not more than three times the amount of damages for
> mental anguish and economic damages.

TEX. BUS. & COM. CODE § 17.50(b)(1).  CMI interprets that provision to mean that

Oliver could recover three separate sums of damages: $7,784.17 for economic

damages; three times that, or $23,352.51, for mental anguish damages; and three

times economic and mental anguish damages combined, or $93,410.04, for

additional damages as a result of intentional wrongdoing.  Defendant's Brief at 4.

Her damages under the DTPA would then total $124,546.72.  *Id.*[*]

However, the history of section 17.50(b)(1) of the DTPA shows that it was not

intended to give a plaintiff three separate damage awards, but rather one damage

award, with the additional damages tied to the amount of economic damages

awarded.  Before its amendment in 1995, section 17.50(b)(1) provided for simple

treble damages if a plaintiff showed that the defendant's wrongdoing was committed

---

[*]      CMI reached slightly different totals than those stated here, as it
appears to have done its calculations starting with $7,785.43 as Oliver's economic
damages -- an amount that it calculated based on adding up Oliver's alleged trial
payments under her mortgage.  *See* Defendant's Brief at 3.  However, since Oliver
stated that she is claiming $7,784.17 in reliance damages, the court did its
calculations based on that amount.  *See* Amended Motion to Remand at 4 (docket
entry 10).

knowingly -- the court could award "the amount of actual damages found by the trier of fact.  In addition the court shall award two times that portion of the actual damages that does not exceed $1,000.  If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000."  *See* Deceptive Trade Practices-Consumer Protection-Waiver, Damages, Notice, and Settlement Offer, ch. 380, 1989 Tex. Sess. Law Serv. 380 § 2; see also *In re Jones*, 50 B.R. 911, 919 (Bankr. N.D. Tex. 1985) ("Because the Court has found that the acts of Jones were committed 'knowingly' under Section 17.50(b)(1) of the DTPA, the $500,000 in actual damages sustained by Cass should be trebled.").  The committee notes of the Texas House of Representatives indicate that when the House changed the law to its present form, it was simply trying to tie the amount of additional damages that a plaintiff could recover under the DTPA to the amount of economic damages suffered, not increase the amount that a plaintiff could recover.  *See* House Comm. on State Affairs, Tex. HB 668, 74th Leg., R.S. (1995).  Therefore, CMI's calculations far exceed what would be authorized under the statute.

There are also serious problems with CMI's calculation of potential attorney's fees.  CMI argues that Oliver "could easily recover" $45,000 in attorney's fees.  Defendant's Brief at 4.  However, the record shows that Oliver's attorney has charged her $75 per hour.  *See* Affidvait of Thomas Howery (Docket entry 4-1).  To reach

CMI's arbitrary fee amount, Oliver's attorney would have to work 600 hours on this case.  Given the relatively simple nature of the allegations in the complaint, the court doubts that such an effort will be necessary.

Therefore, the court reaffirms its finding that CMI has not met its burden of proving that the amount in controversy exceeds $75,000.  CMI's motion for reconsideration is accordingly **DENIED**.

**SO ORDERED**.

March 27, 2014.

A. JOE FISH
**Senior United States District Judge**